UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAWAD HAMMAD, et al.,<br><br>        Plaintiffs,<br><br>     v.<br><br>KENNETH D. LEWIS, et al.,<br><br>        Defendants. | Civil Action  09-00446 (HHK) |

MEMORANDUM OPINION

Plaintiffs Jawad Hammad, Deena Hammad and Jude J. Hammad (collectively, " the Hammads") bring this action against defendants Kenneth Lewis of Bank of America Corp. ("BOA") and Colleen Hankins of National Financial Services ("NFS") (collectively "defendants") alleging that BOA made an improper margin call and improperly liquidated their accounts.  The Hammads also allege that NFS made a fraudulent report to the IRS, and that the Financial Industry Regulation Authority ("FINRA") acted with bias and prejudice when it reviewed their case.  The Hammads seek $10,333,000 in relief.

Before the court are both Lewis's [#8] and Hankins'00 [#11] motions to dismiss for failure to state a claim upon which relief can be granted.  Upon consideration of the motions, the opposition thereto, and the record of this case, the Court concludes that the motions should be granted.

I.  BACKGROUND

In March 2008, the Hammads held margin shares of Lehman and Citigroup with BOA.  After the collapse of Bear Stearns, the prices of the Hammads' shares dropped significantly.  As

a result of the drop in price, the Hammads owed a margin debt to BOA. On March 17, 2008, Banc of America Investment Services[1] notified the Hammads by phone that they must deposit funds to cover their margin debt. The Hammads deposited no funds, and pursuant to their margin agreement, BOA liquidated the Hammads' shares and funds from the Hammads' personal account to satisfy a portion of the margin debt. After liquidation, the Hammads remained approximately $15,000 in debt.

In March 2008, the Hammads brought suit against defendants in the Circuit Court for the City of Alexandria. The Alexandria court referred the matter to arbitration, and the case then proceeded to an arbitration hearing before FINRA. The Hammads asserted causes of action "related to [BOA's] alleged unauthorized liquidation of [the Hammads'] position to meet a margin call." (BOA's Mot. Dismiss Ex. E at 2.)[2] During the arbitration proceedings, the Hammads requested a forensic search of BOA's computers to locate a recording of the margin call phone conversation between the Hammads and a BOA employee. FINRA refused this request and, after the hearings, dismissed the Hammads' claims. FINRA further found that the Hammads owed BOA $15,589.92.

---

[1] Banc of America Investment Services is a subsidiary of BOA.

[2] When determining the sufficiency of a complaint, the court may consider documents essential to the plaintiff's claim and referred to in the complaint. *See Savage v. Scales*, 310 F. Supp. 2d 122, 129 (D.D.C. 2004). "[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). Defendants attached the FINRA Dispute Resolution decision to their motion to dismiss. (*See* Def. Bank of America's Mot. Dismiss Ex. E.) Because the Hammads refer to the FINRA Dispute Resolution proceedings in their complaint, and a review of this panel's proceedings is essential to the Hammads' claims, the Court may review the document without converting the motion to dismiss into a motion for summary judgment. *Id*.

## II. ANALYSIS

This action comes before the court on defendants' motions to dismiss, or, in the alternative, to confirm the arbitration award. Defendants argue that the doctrine of collateral estoppel bars the Hammads from bringing forth claims that mirror those brought before FINRA. Defendants further aver that the Hammads have not established a basis for vacating or modifying the FINRA arbitration award. The Hammads rejoin that the FINRA arbitration panel was biased and that the court should adjudicate the matter independently.

A complaint must be "liberally construed in favor of the plaintiff." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Accordingly, the court must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Id*. A plaintiff, however, must plead factual allegations capable of raising a right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will be dismissed if, given the benefit of all favorable inferences, plaintiffs can prove "no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The court is not required to "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id*.

As an initial matter, the Hammads' claim of fraudulent reporting to the IRS is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Brokers such as NFS are required to file returns "showing the name and address of each customer, with such details regarding gross proceeds and such other information as the Secretary may by forms or regulations require with respect to such business." I.R.C. § 6045 (2009). Furthermore, federal regulations require that a broker's returns "report the name, address, and taxpayer identification number of the customer, the aggregate

gross proceeds of all sales of the account during the reporting period." 26 C.F.R. § 6045-1(p) (2009). At best, the Hammads' claim points to an error by the IRS in classifying the Hammads' gross proceeds as profits. In any event, this claim presents no set of facts under which relief may be awarded. *See Kowal*, 16 F.3d at 1276.

The Court's review of the motions to dismiss the remaining claims requires a two-step analysis. First, the Court must decide whether any of the Hammads' claims are barred by collateral estoppel. This determination turns primarily on whether the basic facts underlying the claims presently before the Court "are indistinguishable from the facts at issue in the prior adjudication." *Bryson v. Gere*, 268 F. Supp. 2d 46, 58 (D.D.C. 2003). The Court's application of collateral estoppel to any of the Hammads' claims would necessarily eliminate the "entitlement to relief" with respect to those claims. *See Bell Atlantic Corp.*, 550 U.S. at 555.

Next, the Court must determine whether the Hammads' claim of bias and prejudice warrants a review of the arbitration proceedings in their entirety. Such a determination is dependent predominately on whether the Hammads plead sufficient factual allegations to state a claim for vacatur under the Federal Arbitration Act, 9 U.S.C. § 10(a).

**A.    Collateral Estoppel**

The Hammads contend that the Court should conduct an independent inquiry into the conflict regarding the margin call despite the fact that the issue was already adjudicated by FINRA. Defendants rejoin that the Court's review of the issues already decided upon by FINRA is precluded by the doctrine of collateral estoppel.

Collateral estoppel "precludes relitigation of an (1) identical issue (2) that was fully and fairly litigated and (3) determined by a valid judgment on the merits (4) in which the issue was

essential." *Bryson,* 268 F. Supp. 2d at 57.  Decisions of an arbitration panel normally provide the type of finality sought by courts to be protected by collateral estoppel.  *See Sanders v. Wash. Metro. Area Transit Auth.*, 819 F.2d 1151, 1157 (D.C. Cir. 1987) ("The rationale behind this principle is obvious:  to permit unrestricted judicial review of the arbitration process would utterly defeat the purpose of finality of arbitration by allowing a second tier of review.").

With respect to collateral estoppel, the principal question before the Court is whether the issues sought to be precluded by defendants are substantially similar to those decided by the arbitration panel.  A court may preclude claims "[w]here the basic facts underlying the new claims are indistinguishable from the facts at issue in the prior adjudication."  *Bryson*, 268 F. Supp. 2d at 58.

A review of the Hammads' complaint reveals that the Hammads' current claims of improper margin calls and improper liquidation of funds are identical to the claims adjudicated by the arbitration panel.  *See Bryson*, 268 F. Supp. 2d at 57.  Before FINRA, the Hammads brought claims arising from the March 17, 2008 phone conversation regarding the Hammads' margin debt.  (BOA's Mot. Dismiss Ex. A.)  The Hammads also brought a claim arising from the allegedly improper liquidation of their investment account and their checking account.  (*Id*.)  The Hammads' present claims arise from the same March 17, 2008 phone conversation and from the liquidation of the same two accounts.  (*See* Compl. ¶¶ 2, 3.)  Thus, the issues that the Hammads presently ask the court to review independently are precisely the same as those adjudicated by FINRA.

The last three elements of the *Bryson* test are easily met.  The fact that the case was litigated before FINRA indicates that the case was thoroughly litigated, with no evidence to the

contrary. *See Bryson*, 268 F.2d at 59; *see also Karsner v. Lothian*, 532 F.3d 876, 879 (D.C. Cir. 2008) (stating that FINRA has "express statutory authority to adjudicate actions against members who are accused of illegal securities practices."). Furthermore, as FINRA is an established arbitration panel, its judgment is valid. See *Bryson,* 268 F.2d at 59 ("A judgment is valid when it was rendered by a court of competent jurisdiction."); *see also Karsner*, 532 F.3d at 879. Lastly, the issues currently sought to be precluded were not simply dictum, but essential points on which the arbitration panel based its judgment. *See Bryson,* 268 F.2d at 60 ("[P]laintiff's remaining issues . . . are so central to the dispute that the arbitrator was obliged to, and did, consider them."); (*see also* BOA's Mot. Dismiss Ex. E at 2 ("The causes of action relate to [BOA's] alleged unauthorized liquidation of [the Hammads'] position to meet a margin call.")). Consequently, all four elements of the *Bryson* test are met and the Hammads' claims of improper margin calls and improper liquidation of their accounts are precluded by collateral estoppel.

**B.    Review of the Arbitration Award**

The Hammads contend that FINRA's decision to refuse to order a forensic search of BOA computers to recover the March 17, 2009 telephone conversation was biased and prejudicial. Defendants rejoin that the Hammads have not stated a basis on which the Court may vacate a valid arbitration decision.

Courts have long recognized that judicial review of an arbitration award is extremely limited. *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). The Federal Arbitration Act provides, in relevant part, that a court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators" or if it finds that "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or

of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a) (1994).

The heavy burden of proving evident partiality falls on the shoulders of the party seeking vacatur. *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996). To meet this burden, the party seeking to vacate an arbitration award on this ground must establish "specific facts that indicate improper motives on the part of an arbitrator." *Id*. Furthermore, "[i]t is well established that a mere appearance of bias is insufficient to demonstrate evident partiality." *Alston v. UBS Fin. Servs., Inc.*, 2006 WL 20516, *3 (D.D.C. Jan. 2, 2006).

Because the Hammads' complaint is devoid of any factually-based allegations of evident partiality, even the most liberal of constructions cannot fathom a set of facts which would entitle them to relief on these grounds. *See Kowal*, 16 F.2d at 1276. The Hammads' only references to evident partiality are two brief and entirely conclusory statements. (*See* Compl. ¶ 4 ("Mr. Robert S. Plotkin, arbitration panel Chairperson of FINRA Dispute Resolution was bias and prejudice.")); (*see also* Compl. ¶ 6 ("FINRA Arbitration conclusion . . . was onesided, prejudice and unfair.")). Neither statement sets out a factual basis for concluding that FINRA acted with improper motives. *See Al-Harbi*, 85 F.3d at 683.

The Hammads have also failed to allege a factual basis for misconduct regarding FINRA's determination that "no inference would be drawn that the missing tapes contained material adverse to Respondent BOA." (BOA's Mot. Dismiss Ex. E at 2.) Arbitration panels are afforded broad discretion with respect to evidentiary determinations and "every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 481 F.3d 813, 818

(D.C. Cir. 2007) (quoting *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985)); *see also id.* at 817 ("It is well within an arbitrator's authority to refuse to hear evidence that is . . . of little relevance.") (internal citations omitted).  Accordingly, the Hammads' claim states no basis for relief on grounds of misconduct.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that defendants' motions to dismiss for failure to state a claim [#8, 11] should be granted.  An appropriate order accompanies this memorandum opinion.


                                                      Henry H. Kennedy, Jr.
                                                      United States District Judge


Date:  August 3, 2009